# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2227 | **DATE** | 12/21/2001 |
| **CASE TITLE** | Patricia Rogers vs. City of Chicago | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The City's Motion for Summary Judgment is granted. The City's Motions to Strike Rogers' affidavit and to bar Rogers' expert are also granted. Rogers' Motion to Strike is denied, and the City's Motion for Sanctions is denied. This case is dismissed.

(11) ■ [For further detail see

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 20 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 68 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| WAP | courtroom deputy's initials | 01 DEC 21 PM 2: 20 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PATRICIA ROGERS

                Plaintiff,

        v.

CITY OF CHICAGO,

               Defendant.

Case No. 00 C 2227

Judge Harry D. Leinenweber



DOCKETED

DEC 2 6 2001

## MEMORANDUM OPINION AND ORDER

Patricia Rogers accuses two former supervisors in the Chicago Police Department (the "CPD") of sexual harassment, and she alleges that after complaining about the harassment, members of the CPD retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and 3(a). The City of Chicago moves for summary judgment on both claims, to strike portions of Rogers' response to the summary judgment motion, and to bar Rogers' expert.

## BACKGROUND

Rogers joined the CPD in 1985, working in the 24th District from July 1996 to July 1997. During that time, Lt. Daniel Schrager served as Watch Commander, Robert Kelenyi as a sergeant, and Mark Kelly and Barbara Panocha as fellow officers. Work shifts in the CPD are divided into three watches: First Watch (days), Second Watch (afternoons), and Third Watch (midnights). Rogers and Kelenyi both worked the First Watch from July 18, 1996, to August 15, 1996, and the Third Watch from October 10, 1996 to July 17, 1997. From

68

November 1996 through January 21, 1997, Rogers and Kelly worked together regularly as partners.

On January 21, 1997, Rogers and Kelly were separated as partners. Rogers and Kelly believe Kelenyi separated them, but Schrager asserts that he separated them for poor job performance. The City points out that only the watch commander, Schrager, has the authority to separate partners.

Rogers and Kelly approached Schrager about the separation on January 24, 1997. Kelly went in alone to Schrager's office while Rogers waited outside. At that time, Rogers had no intention of filing with Schrager a sexual harassment charge against Kelenyi. After talking with Schrager for a period of time, Kelly called Rogers into Schrager's office and told her, "Now, Patty, I think you need to tell [Schrager] what's going on here because I'm sick of it. This guy [Kelenyi] is riding on my ass and I'm tired of it . . ." At this point, Rogers told Schrager that Kelenyi had made sexual comments to her.

Although she does not remember exactly what Kelenyi allegedly said to her, she claims that in early January 1997, Kelenyi said something approximating, "You look – your breasts look nice in that turtleneck, that red turtleneck." Kelenyi supposedly said this to her in or near the locker room, and Kelly asserts that he heard Kelenyi make the remark.

Upon hearing this story, Schrager opened an investigation by contacting the Office of Professional Standards and obtaining a "CR"

or "Complaint Register" number.  He then submitted a written report of the allegation directly to the Internal Affairs Division (the "IAD").  Schrager also told Kelly and Rogers to file a more detailed statement regarding the incident, but they did not.  IAD assigned agent Denise Draper-Sibley to investigate, and she took statements from Rogers, Kelly, Kelenyi, and Officer Barbara Panocha.

Rogers gave Draper-Sibley a statement, but she refused to sign it.  Nevertheless, Rogers complained in her statement of several other incidents of harassment.  Rogers told Draper-Sibley that two or three weeks after Kelenyi's comments regarding her breasts, he asked her to put a paper in a box at the other end of the room, saying, "Put it over there so that I can watch you walk."  She stated that Kelenyi harassed her and Kelly after the remark about her breasts by continually riding along on their calls.  Rogers also disclosed to Draper-Sibley that Kelenyi had told her on January 30, 1997, that he had marked her for retribution.

Further, Rogers informed Draper-Sibley about an incident on January 18, 1997, involving a robbery call that Rogers worked with Panocha.  Panocha allegedly determined that no report of the incident was necessary, but Kelenyi ordered them to file a report anyway.  Panocha wrote the report, adding, "Per Sgt. Kelenyi."  Rogers alleged that Kelenyi confronted them later that night and ordered them to rewrite the report without the "Per Sgt. Kelenyi" language.  After Panocha rewrote the report, Kelenyi supposedly taunted Rogers by saying, "You have no balls."

Kelly's statement to Draper-Sibley corroborated Rogers' statement. He blamed Kelenyi for separating them. He described his relationship with Kelenyi as caustic, and he complained that Kelenyi "would constantly ride on [their] jobs" and "constantly kick back paper." Due to the close nature of Rogers' and Kelly's relationship, Draper-Sibley decided that Kelly was a biased witness and discounted his testimony. Ultimately, Draper-Sibley concluded that the allegations could not be sustained.

At her deposition, Rogers recounted other instances of unwanted contact with Kelenyi that occurred while she worked the first watch. Rogers claims that sometime after arriving in the 24th District, Kelenyi approached her at a coffee shop and asked for her name, whether she was married, whether she had a boyfriend, and whether she had any children. In another incident, Rogers alleges that Kelenyi told her that he would like to be the book in her back pocket. Finally, Rogers maintains that while responding to a call, Kelenyi caught her when it appeared that she might be slipping and asked her if she wanted a boyfriend.

In addition to Kelenyi's behavior, Rogers claims that the CPD retaliated against her for making the allegations of harassment. Rogers contends that Schrager retaliated against her by denying her the opportunity to work special details, such as supervising parades, sporting events, and festivals. Officers may sign up for a special detail, and they are assigned according to seniority. The City responds, however, that there is no evidence that Rogers was denied

any details.  Rather, the evidence indicates that Rogers actually worked fifteen details from January 24, 1997, through July 17, 1997.

Second, Rogers also claims that the CPD retaliated against her by placing her in the Behavioral Alert Program (the "BAP").  The BAP allows the CPD to identify, deter, and correct behavior contrary to CPD policy.  It is not intended to serve as a substitute for disciplinary action.  Behavioral indicators that may result in placing an officer in the BAP includes excessive force complaints, poor complaint and disciplinary histories, repeated incidents of medical roll use, significant reductions in an officer's performance, and poor traffic safety records.  The CPD places individuals with unsatisfactory records in the BAP for approximately one year, and if no further behavioral problems occur, all record of participation in the BAP is removed from the employee's file.  The BAP does not interfere with promotion, transfer, bidding, or other employment benefits.

Sometime in late March or early April 1997, Lieutenant William Powers placed Rogers in the BAP for excessive medical absences. During this period, the following criteria were used to determine whether an officer should be placed in the BAP:  five or more medical absences over the course of the previous year, lengthy absences, previous abuse of medical absences, medical complaints indicative of a substance abuse problem, and absences adjoining the officer's other days off.  Rogers was placed in the BAP because she had called in

sick on six separate occasions for a total of 22 days between February 1996 and March 1997, complaining of either the flu or an upset stomach. Most of these sick days abutted weekends or holidays. Upon entering the BAP, Rogers was required to provide a urine sample and to submit to a physical examination.

Powers oversaw the BAP from January 1997 to 2000. Only he determined whether to place an officer in the BAP, and he had no knowledge of Rogers' sexual harassment complaints when he placed her in the BAP. Rogers suffered no loss of pay or benefits as a result of being placed in the BAP, and she was never demoted or refused a transfer between 1997 and 2000. She was released from the BAP after one year, during which time her medical absences were reduced.

Rogers filed her first EEOC Charge of Discrimination alleging sexual harassment and retaliation on January 31, 1997. She filed her second EEOC Charge on July 3, 1997, claiming that her placement in the BAP, the required physical examination, and the urine sample were ordered in retaliation for her original complaint. On April 17, 2000, Rogers filed this action, alleging sexual harassment and retaliation in violation of Title VII.

## MOTIONS TO STRIKE

Rogers moves to strike portions of the City's Local Rule 56.1 Statement of Facts. Rogers' motion is denied. Rogers fails to provide a basis for striking the relevant paragraph in several instances, and other arguments in support of her motion to strike are not well taken. Nevertheless, the court has disregarded all

irrelevant and argumentative portions of the City's Local Rule 56.1 Statement in reaching its ruling.

The City moves to strike Rogers' 30-page, 123 paragraph affidavit and nearly all of her Local Rule 56.1 Statement of Additional Facts. According to the City, the affidavit should be stricken in its entirety as a self-serving document that ignores Rogers' deposition testimony entirely while attempting to rewrite the record. The City identifies other, more specific grounds for striking most of the affidavit paragraphs: some paragraphs include inadmissible hearsay, others are not based on Rogers' personal knowledge, several conflict with Rogers' prior testimony, and others are merely conclusory, failing to assert specific facts. With respect to Rogers' Statement of Additional Facts, the City states its objections and grounds to strike, paragraph by paragraph, in its response.

Most of Rogers' Local Rule 56.1 Response to the City's Statement of Material Facts and her Local Rule 56.1 Statement of Additional Facts rests upon Rogers' affidavit. Incredibly, Rogers never refers to her deposition in her LR 56.1 Statement of Additional Facts. When Rogers does refer to her deposition in her LR 56.1 Response to the City's Statement of Material Facts, it is only in reply to the City's citation of the deposition. In these instances, Rogers argues that the cited deposition sections do not support the City's stated assertions, but invariably they do.

Although the affidavit itself contains some specific allegations, many of the allegations are clearly not based on Rogers' personal knowledge. Other allegations are conclusory, supported by inadmissible hearsay, or founded on unauthenticated documents. Further, several paragraphs conflict with Rogers' deposition testimony.

The Seventh Circuit has repeatedly held that self-serving affidavits without factual support in the record will not defeat a motion for summary judgment. *Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001). "[A] deposition is the time for the plaintiff to make a record capable of surviving summary judgment–not a later filed affidavit." *Cowan v. Prudential Ins. Co. of America*, 141 F.3d 751, 756 (7th Cir. 1998). A court may give credence to a later filed affidavit if the party offering it can demonstrate that the deposition statement was mistaken, *id.*, but Rogers has attempted no such showing here.

Further, the evidence cited in support or opposition to a motion for summary judgment must be admissible evidence. *See Corder v. Lucent Technologies Inc.*, 162 F.3d 924, 927-928 (7th Cir. 1998). Affidavits must be based on personal knowledge. FED.R.CIV.P. 56(e). Inadmissible hearsay cannot be considered on summary judgment. *See Stenholt v. Centex Real Estate Corp.*, No. 95 C 2664, WL 529414, at *3 (N.D. Ill. Sept. 13, 1996). "Statements by a non-decision maker that amount to mere speculation as to the thoughts of the decision maker are irrelevant" to an inquiry of discrimination. *Chiaramonte v.*

*Fashion Bed Group, Inc.*, 129 F.3d 391, 397 (7th Cir. 1997).
Unauthenticated documents cannot be considered on a motion for
summary judgment, *Woods v. City of Chicago*, 234 F.3d 979, 989 (7th
Cir. 2000), as authentication is a condition precedent of
admissibility. FED.R.EVID. 901(a). *Otto v. Variable Annuity Life
Ins. Co.*, 134 F.3d 841, 852-853 (7th Cir. 1998).

The court strikes the entire affidavit. In so doing, the court
notes that paragraphs 1-3, 13, 14, 16, 17, 20, 21, 25, 26, 34, 35,
46, 47, 50, 53, 62, 74-77, 82-95, 103, 105, 106, 108-110, 113, 114,
and 116-120 are not incorporated in either her LR 56.1 Statement or
LR 56.1 Response. It is clear that paragraphs 15, 33, 37, 54, 70,
and 100, are not based on Rogers' personal knowledge. Paragraphs 18,
19, 29, 36, 40, and 45 contradict Rogers' prior deposition testimony,
and paragraphs 28, 30, 41, 44, 48, 55, 78-80, 102, 104, and 107
contain inadmissible hearsay. Paragraphs 8, 22, 61, and 63 fail to
assert specific facts, and paragraphs 71-73 and 112 rely on
unauthenticated documents. The court will not waste additional time
attempting to find acceptable paragraphs within the affidavit. It
"is reasonable to assume that just as a district court is not
required to 'scour the record looking for factual disputes,' it is
not required to scour the party's various submissions to piece
together appropriate arguments." *Little v. Cox's Supermarkets*, 71
F.3d 637, 641 (7th Cir. 1995) (internal citation omitted)(quoting
*Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.
1994)).

The City also moves to strike Rogers' expert, Dorothy Steward. Rogers offers Steward as an expert in the CPD's internal investigatory procedures. Steward's expertise is rooted in her experience at the CPD Internal Affairs Division and her work for the McHenry County Sheriff's Department as an Equal Employment Opportunity Officer. Steward opines that the CPD's investigation into Rogers' claims substantially deviated from the procedures normally followed for internal investigations.

Rogers first offered Steward as an expert on discrimination, but after the City moved to strike her as an expert, Steward changed her area of expertise through an affidavit. Rogers relies upon this affidavit in her opposition to the City's motion to strike, but Steward's affidavit varies markedly from her deposition testimony. Accordingly, the court looked to Steward's deposition testimony rather than the later-filed affidavit in evaluating Steward's admissibility as an expert.

When "specialized knowledge will assist the trier of fact to understand evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may" offer an opinion on the relevant issues. FED.R.EVID. 702. However, the testimony must be "based upon sufficient facts or data," be "the product of reliable principles and methods," and the witness must have "applied the principles and methods reliably to the facts of the case." *Id.* When expert testimony is offered, the district court must exercise its gate keeping obligation to ensure that all

such testimony is not only relevant, but reliable. *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)(*citing Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). Certain guidelines aid the court in its gate keeping function, including whether the expert's "theory or technique . . . can be (and has been) tested," whether it "has been subjected to peer review and publication," whether there is a high "known or potential rate of error," whether there are "standards controlling the technique's operation," and whether the theory or technique enjoys "general acceptance" within a "relevant scientific community." *Daubert*, 509 U.S. at 593-94. These guidelines are applicable, even when the expert's opinion is derived from experience or training. *Clark v. Takata Corp.*, 192 F.3d 750, 758 (7th Cir. 1999).

During her time in the CPD Internal Affairs Division, Steward reviewed more than 1,000 completed Internal Affairs Division files, but only about a dozen related to sexual harassment. She never conducted a sexual harassment investigation, never had any involvement in developing the CPD's policy on sexual harassment, and never made any recommendations with respect to the CPD's existing policy on sexual harassment. Although she has reviewed unnamed Justice Department publications and experienced sexual harassment within the CPD herself, she has not conducted any scholarly research on the subject other than an unpublished paper written in connection with her graduate studies. She has not assembled any empirical data or relied on any data generated by anyone else. Further, she rested

her opinions in this case on parts of the file chosen by Rogers' counsel.

Lacking any solid data, Steward asks the court to accept too much on faith. Her report does too little to show that her opinion is the product of reliable principles and methods or that she has applied her principles reliably to the present facts. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." *Minasian v. Standard Chartered Bank, PLC*, 109 F.3d 1212, 1216 (7th Cir. 1997)(quotation omitted). Accordingly, the City's motion to bar her testimony is granted.

Rogers' Local Rule 56.1 submissions fare no better. Local Rule 56.1 requires the nonmoving party to file

> a concise response to the movant's statement [of material facts] that shall contain:
>
>> (A) a response to each numbered paragraph in the moving party's statement, including . . . specific references to the affidavits, parts of the record, and other supporting materials relied upon, and
>>
>> (B) a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon.

Furthermore, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." *Id.*

Rogers' submissions fall well below the Local Rule minimum requirements for opposing summary judgment. Most of Rogers' 56.1

submissions are built upon her stricken affidavit and Steward's stricken testimony. Further, as pointed out by the City, Rogers' submissions are replete with conclusory allegations, unauthenticated documents, inadmissible hearsay, and argumentative objections. Other paragraphs in Rogers' LR 56.1 statements fail to cite any record evidence in support. The court refuses to parse and piece together the few acceptable phrases within Rogers' submissions, and they are stricken in their entirety. *See Bordelon v. Chicago School Reform Board of Trustees*, 233 F.3d 524, 527-29 (7th Cir. 2000). As a result, the City's Statement of Facts is deemed admitted.

## DISCUSSION

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). *See also LINC Finance Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Freeman v. Madison Metropolitan School District*, 231 F.3d 374, 379 (7th Cir. 2000) (quotation omitted). The court applies this standard with added rigor in employment discrimination cases where issues of intent and credibility often dominate. *See Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### Rogers' Sexual Harassment Claim

Rogers claims that Kelenyi's behavior constitutes unlawful sexual harassment. "Sexual harassment so severe or pervasive as to alter the conditions of [the victim's] employment and create an abusive working environment violates Title VII." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998)(internal quotations omitted). To establish a prima facie case of hostile environment sexual harassment, a plaintiff must show that: (1) she was subjected to unwelcome sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (2) the harassment was based on sex; (3) the sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance in creating an intimidating, hostile, or offensive working environment that seriously affected the psychological well-being of the plaintiff; and (4) there is a basis

- 14 -

for employer liability. *Parkins v. Civil Construction of Illinois, Inc.*, 163 F.3d 1027, 1032 (7th Cir. 1998).

Under the third element, a sexually objectionable environment must be both objectively and subjectively offensive; one that a reasonable person would find hostile or abusive, and one that the victim actually perceived to be so. *Faragher*, 524 U.S. at 787. Courts must determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Id.* at 787-88 (internal quotation omitted).

As the City emphasizes, Rogers did not complain about Kelenyi's comments until well after they occurred. She reported the pre-January 1997 incidents to no one. She only complained about Kelenyi's alleged behavior after prompted to do so by Kelly. Even when Kelly was in Schrager's office complaining about his separation from Rogers, Rogers did not intend to file a discrimination charge. Rogers' behavior indicates that even she did not perceive Kelenyi's behavior to be so abusive or hostile that it constituted sexual harassment.

Even if Rogers did find Kelenyi's conduct to be offensive, the court concludes that, as an objective matter, his conduct did not rise to the level of harassment. "The concept of sexual harassment is designed to protect working women from the kind of male attentions

that can make the workplace hellish for women." *Baskerville v.
Culligan Int'l. Co.*, 50 F.3d 428, 430 (7th Cir. 1995). The line
separating the merely vulgar and mildly offensive from the deeply
offensive and sexually harassing is not a bright one. *Carr v.
Allison Gas Turbine Division*, 32 F.3d 1007, 1010 (7th Cir. 1994).
However, a "handful of comments spread over months is unlikely to
have so great an emotional impact as a concentrated or incessant
barrage." *Baskerville*, 50 F.3d at 431.

A review of Seventh Circuit precedent indicates where the court
must draw the line between the mildly offensive and the truly
oppressive. For instance, in *Baskerville*, the Seventh Circuit held
that the plaintiff's supervisor had not engaged in actionable sexual
harassment even though over a seven-month period he: (1) called
plaintiff "pretty girl"; (2) made grunting sounds at plaintiff; (3)
told plaintiff that his office was not hot until she arrived; (4) a
PA announcement asking for attention meant that all pretty girls
should run around naked; and (5) alluded to masturbation as his only
solace in his wife's absence. *Baskerville*, 50 F.3d at 430-31.
Similarly in *Gleason v. Mesirow Financial, Inc.*, 118 F.3d 1134, 1144-
45 (7th Cir. 1997) the plaintiff's allegations that the manager's
reference to female customers as "bitchy" or "dumb," his ogling of
female employees, his flirting with an employee's female relatives,
his comments on a co-worker's anatomy, his claim that he spent the
weekend at a nudist camp, and his stated dream of holding plaintiff's
hand, were held insufficient as a matter of law to support a hostile

- 16 -

work environment claim.  In *Cowan*, the court held that plaintiff's allegations failed to support her hostile environment claim despite facts that showed:  (1) the company used a provocatively dressed cheerleader in a football manual; (2) co-workers circulated a cartoon depicting two safes involved in "safe sex" around the office and told numerous sexual jokes; (3) a manager told the plaintiff that he would do as plaintiff did by abstaining from sex; (4) her male supervisor refused to have anything to do with her; (5) the men in the office excluded the women when socializing with each other outside of the office; (6) plaintiff's immediate supervisor once referred to women as "blood-suckers," "leeches," and "dizzy broads" in her presence; and (7) frequent discussions among male co-workers concerning their trips to the local strip club.  *Cowan*, 141 F.3d at 756.

The line has not been crossed in this case.  Kelenyi asked Rogers if she was married or if she had a boyfriend, he caught her when she appeared to be falling and asked her if she wanted a boyfriend, he told her that he wanted to be the book in her back pocket, he told her to deposit a piece of paper in a bin across the room so that he could watch her walk, he forced her partner to rewrite a report, he appeared at an unusually high number of calls that Rogers had answered, and he told her that her breasts looked nice in the shirt she was wearing.  Some of the alleged incidents were not even sexual in nature; the events were fairly sporadic, occurring over a seven-month period; none of the incidents were physically threatening; and most were not severe.  As a matter of

law, such behavior fails to trigger liability under Title VII. *See Cowan*, 141 F.3d at 756. Kelenyi's comments may have been juvenile and boorish, but it is far from rendering Rogers' workplace hellish. *See Adusumilli v. City of Chicago*, 164 F.3d 353, 362 (7th Cir. 1998). Accordingly, her sexual harassment claim fails.

## Retaliation

Rogers alleges that the CPD retaliated against her complaints of sexual harassment by placing her in the BAP and denying her special detail assignments. To state a prima facie case of retaliation under Title VII, a plaintiff must present sufficient evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action. *Lalvani v. Cook Co., Ill.*, 269 F.3d 785, 790 (7th Cir. 2001). In the instant case, Rogers cannot meet (2) or (3).

Rogers' placement in the BAP did not constitute an adverse employment action. Rogers may not have believed that her placement in the BAP was warranted, but "not everything that makes an employee unhappy is an actionable adverse action." *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996). "[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001). The CPD placed Rogers in the BAP, but she was not demoted, she did not suffer a pay-cut, and she was not denied any transfers that she

sought. Placement in the BAP is not even to be considered as a
disciplinary measure. Without more, Rogers' placement in the BAP
does not establish the second requirement of her prima facie case.

The requirement that Rogers submit to a physical exam does not
qualify as an adverse employment action in this case. An independent
medical examination could constitute an adverse employment action in
particular circumstances, *Place v. Abbott Laboratories*, 215 F.3d 803,
809 (7th Cir. 2000), but in this case, the evidence does not support
the inference that Rogers was being singled out. The CPD placed
Rogers in the program because of her excessive medical absences,
absences for which she claimed to be suffering from the flu or
stomach problems. In such circumstances, the court declines to rule
that the medical examination was an adverse employment action.

Nor can Rogers establish the third element of a prima facie
case. In some cases, suspicious timing may suggest a causal link
between protected expression and adverse action. *Hunt-Golliday v.
Metropolitan Water Reclamation District of Greater Chicago*, 104 F.3d
1004, 1014 (7th Cir. 1997). Rogers complained about Kelenyi's
behavior in January, but she was not placed in the BAP until the end
of March or early April. The two-month interval between her
complaint and her referral into the BAP destroys the causal inference
and is fatal to her claim. *See Adusumilli*, 164 F.3d at 363 (ruling
that a two-month interval between the plaintiff's protected
expression and her placement into the BAP, and her subsequent

- 19 -

termination eight months later did not create an inference of causation).

Even if Rogers had met the three criteria necessary for a prima facie case, Rogers cannot show that she was placed in the BAP in retaliation for her complaint rather than for her inability to perform her job as expected. It is undisputed that Powers placed Rogers in the BAP and that he had no knowledge of Rogers' complaint. It is also undisputed that Powers placed Rogers' into the BAP as a result of her accumulated absences. Unable to present evidence that the City's proffered explanation for Rogers' placement in the BAP is a lie, Rogers cannot prevail.

Finally, Rogers asserts that she was denied special detail assignments in retaliation for her complaint. She fails, however, to offer any evidence to support this allegation. Accordingly, she is not entitled to take this claim to a jury.

### CONCLUSION

The City's Motion for Summary Judgment is granted. The City's Motions to Strike Rogers' affidavit and to bar Rogers' expert are also granted. Rogers' Motion to Strike is denied, and the City's Motion for Sanctions is denied. This case is dismissed.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: _December 21, 2001_

- 20 -